In re Harris WILLIAM and Gladys E. Reinboldt, Debtors.

Harris WILLIAM and Gladys E. Reinboldt, Plaintiffs,

v.

The TRAVELERS INSURANCE COMPANY, a Connecticut corporation, Defendant.

BKY 3–83–1805.
Civ. No. 4–84–169.

United States District Court, D. Minnesota, Fourth Division.

May 16, 1984.

Timothy D. Moratzka and Robert C. Neill, Moratzka, Dillon & Kunkel, Hastings, Minn., for plaintiffs.

James M. Pfau, Hendrik De Jong, and Thomas L. Kimer, Faegre & Benson, Minneapolis, Minn., for defendant.

William P. Westphal, Minneapolis, Minn., trustee.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the plaintiffs' appeal from an order of the bankruptcy court dated December 22, 1983. In that order, the bankruptcy court dismissed the plaintiffs' complaint seeking to set aside a mortgage foreclosure sale.

## FACTS

The plaintiffs Harris William Reinboldt and Gladys E. Reinboldt (Debtors) operate a dairy and grain farm in Minnesota. As security for a loan of $260,000, Debtors signed a mortgage giving the Travelers Insurance Company (Travelers) a first lien on approximately 440 acres of the Debtors' farmland. The Debtors defaulted on the note secured by the mortgage. In accordance with Minnesota law, the mortgage was foreclosed by advertisement on November 2, 1982. Travelers purchased the property by bidding in the full amount of its debt plus statutory costs and fees, approximately $221,000. Pursuant to Minnesota law, the Debtors retained the right to redeem the property for one year.

The Debtors filed a joint bankruptcy petition under Chapter 11 of the Bankruptcy Code on October 25, 1983. Pursuant to section 108(b)(2) of the Bankruptcy Code the period of redemption was extended for an additional 60 days to December 24, 1983. The Debtors also commenced this adversary proceeding to set aside the foreclosure sale as a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(2)(A) because the amount bid in at the sale was not reasonably equivalent to the value of the property.

Norwest Bank Winona, National Association (Norwest) had been granted a lien on the Debtors' property pursuant to a mortgage deed signed by the Debtors on May 10, 1982, and recorded on June 4, 1982. This lien secured a note in the amount of $100,000, and was subordinate to Travelers' prior lien. On November 7, 1983, Norwest redeemed the first mortgage held by Travelers, thereby succeeding to Travelers' rights in Debtors' land. Accordingly, Norwest rather than Travelers is the real party in interest in this action.

On December 22, 1983, the bankruptcy court entered an order denying the Debtors' request to set aside the foreclosure sale. The bankruptcy court granted Debt-

ors an ex parte order staying the effect of its December 22, 1983 order pending resolution of this appeal.

## DISCUSSION

In its December 22, 1983 order, the bankruptcy court held that it could not extend the statutory redemption period beyond the 60 days allowed under 11 U.S.C. § 108(b)(2), relying on *Johnson v. First National Bank of Montevideo, Minnesota,* 719 F.2d 270 (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The Debtors have not challenged that part of the bankruptcy court's order. However, the Debtors assert that the bankruptcy court erred in refusing to set aside the foreclosure sale as fraudulent pursuant to section 548(a)(2)(A). The bankruptcy court refused to set aside the sale on the ground that, under Minnesota law, a foreclosure sale cannot be challenged solely for inadequacy of price. *Kantack v. Kreuer,* 280 Minn. 232, 158 N.W.2d 842 (1968); *Stearns v. Carlson,* 162 Minn. 469, 203 N.W. 212 (1925).

A debtor in possession, such as the Debtors in this action, may recover for the benefit of the estate, property which has been fraudulently conveyed out of the estate. *See* 11 U.S.C. §§ 541, 550 and 1107. The Debtors argue that the mortgage foreclosure sale constituted a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(2)(A)[1] because the mortgagee (Travelers) purchased the property for less than half of the fair market value, and within one year after the mortgage foreclosure sale, the Debtor filed a petition in bankruptcy under Chapter 11.

In response, Norwest argues that the mortgage foreclosure sale should not be set aside for a number of reasons. First, Norwest argues the sale was completed in accordance with the Minnesota statute governing foreclosure by advertisement, and a debtor may not contest a foreclosure sale in Minnesota for inadequacy of price. Next, Norwest argues that section 548 was intended only to avoid transfers effectuated by a debtor's own action, and accordingly, a validly conducted foreclosure sale is not a transfer within section 548. Finally, Norwest argues that adequate consideration was given at the mortgage foreclosure sale because the one-year redemption period provided by Minnesota law substantially lowered the fair market value of the property.

The Debtors' position is based on *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980). In *Durrett,* the court held that a foreclosure sale occurring within a year prior to bankruptcy is a transfer subject to avoidance as a fraudulent conveyance if the sale price is not reasonably equivalent to the value of the mortgaged property.

The United States Court of Appeals for the Ninth Circuit recently reached the opposite conclusion of the *Durrett* court. After examining the statutory and legislative history of section 548(a)(2)(A),[2] as well as the policy considerations of setting aside a validly conducted mortgage foreclosure sale, the court concluded that lien enforcement actions such as mortgage foreclosure sales were not intended to be treated as constructive fraudulent conveyances pursu-

1. Section 548(a)(2) provides as follows:
   (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—
   ....
   (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
   (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
   (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

2. In its brief, Norwest has presented an excellent analysis of the statutory and legislative history of section 548(a)(2)(A) which the Court has reviewed.

ant to section 548(A)(2)(A). *In Re Madrid,* 725 F.2d 1197, 1199–1202 (9th Cir.1984); *see also Abramson v. Lakewood Bank and Trust Co.,* 647 F.2d 547, 549–50 (5th Cir. 1981) (Clark, J., dissenting), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). Accordingly, the Ninth Circuit rejected the reasoning in *Durrett.*

This Court has also reviewed the statutory and legislative history of section 548(a)(2)(A), and agrees with the Ninth Circuit's conclusion that a validly conducted mortgage foreclosure sale was not intended to be treated as a constructive fraudulent conveyance under section 548(a)(2)(A). The Court also agrees with the bankruptcy court's conclusion that the foreclosure sale cannot be set aside because under Minnesota law inadequacy of price is an insufficient ground for challenging an otherwise validly conducted foreclosure sale.[3] *Kantack v. Kreuer,* 280 Minn. 232, 158 N.W.2d 842 (1968); *Stearns v. Carlson,* 162 Minn. 469, 203 N.W. 212 (1925).

Accordingly, **IT IS ORDERED** that the order of the bankruptcy court dated December 22, 1983, dismissing the debtors' claim seeking to set aside the mortgage foreclosure sale is affirmed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

**3.** It should be noted that the very nature of a foreclosure proceeding, coupled with the equity of redemption under state law, lowers the fair market value of foreclosed property. *See* Alden, Gross, and Borowitz, "Real Property Foreclosure as a Fraudulent Conveyance: Proposals for Solving the *Durrett* Problem," 38 Bus.Law. 1605, 1615 (1983). However, if the Court were to base its decision on this ground, a hearing would be necessary to establish if fair market value was paid.